COURT OF APPEALS
DECISION
DATED AND FILED

July 31, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP131**

Cir. Ct. No. **2021CV43**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

DARLENE WEBER, DIANE NORTHAM, JOSEPH G. OZGA,
SHIRLEY MUELLER, DENNIS COOK, GINGER COOK, STEVE LIZER,
CRAIG SCHMIDT, SANDY SCHMIDT, MIKE ATTERBERRY,
KRIS ATTERBERRY, TIM HARTZ, SUE HARTZ, GUY LANDGRAF,
BRUCE LAUTH, LORI LAUTH, JERRY SEVERING, JANE SEVERING,
ETHAN NORTHAM, AND SHANE NORTHAM,

PLAINTIFFS-APPELLANTS,

V.

TOWN OF DOUGLAS,

DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Marquette County: GUY D. DUTCHER, Judge. *Affirmed.*

Before Kloppenburg, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  This appeal marks the second time that we have been asked to address issues relating to the ownership of two parcels of land, known as Lincoln Park and Jackson Park (collectively, the parks), located in the Town of Douglas (the Town) in Marquette County.  *See **Weber v. Town of Douglas**,* No. 2022AP1888, unpublished slip op. (WI App June 20, 2024) (***Weber I***), a per curiam opinion that we cite for case history only.  In the appellants' prior appeal, we affirmed the parts of the circuit court order that denied summary judgment in favor of the appellants and granted summary judgment in favor of the Town, resulting in the dismissal of all of the appellants' causes of action.  ***Id.***, ¶13.

¶2     We reversed the part of the circuit court order that granted summary judgment in favor of the Town on its counterclaim and declared the Town to be the owner of the parks under common law dedication because we could not conclude that no genuine issue of material fact existed concerning the Town's claim of ownership of the parks.  ***Id.***  The issue of the Town's claim of ownership of the parks was remanded to the circuit court for additional factfinding.[1]  *See **id.*** A bench trial ensued, at the conclusion of which the court granted a declaratory judgment that the Town owns the parks under statutory and common law dedication.

---

[1] The Honorable Mark T. Slate presided over the case through summary judgment.  On remand, the Honorable Guy D. Dutcher presided over the case, including the bench trial.

¶3 The appellants, by counsel, appeal the judgment and argue that the circuit court erred in: (1) its factual findings and legal determinations that the parks are owned by the Town under statutory and common law dedication; (2) permitting the Town to pursue an unpled common law dedication claim at trial and to present evidence supporting this claim; and (3) denying the appellants' pretrial motion to amend pleadings to join parties the appellants alleged were necessary in order to determine ownership of the parks. We conclude that the appellants have not demonstrated that the circuit court's factual findings are clearly erroneous, and we affirm the court's legal determination that the Town owns the parks under statutory dedication, which is dispositive of all issues raised on appeal.[2] Accordingly, we affirm.

## BACKGROUND

¶4 We incorporate the undisputed factual background as set forth in *Weber I*, and restate only pertinent facts and evidence presented at trial.

¶5 Most appellants are owners of residential lots located in the Lake View Subdivision (the subdivision) in the Town, and some appellants have ownership interests only in piers on Lake Mason which some of the lot owners maintain. The parks are also located in the subdivision.

---

[2] Specifically, our determination that the Town owns the parks under statutory dedication constitutes an implicit rejection of the appellants' other claims that: (1) the circuit court erred in rejecting the appellants' motion to add other, "necessary," parties; and (2) the Town was improperly allowed by the circuit court to pursue a common law dedication claim at trial which was not specifically raised in the Town's counterclaim. *See Lamar Cent. Outdoor, LLC v. DHA*, 2019 WI 109, ¶41, 389 Wis. 2d 486, 936 N.W.2d 573 ("An appellate court need not address every issue raised by the parties when one issue is dispositive." (quoting *Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508)).

¶6      The issue of the ownership of the parks originated over one century ago.  On June 29, 1926, real property owners Andrew Schmidt, W.C. Ottemann, and H. Mueller (collectively, the platters) submitted a plat (the plat) to the Town.  The plat created the subdivision, consisting of forty-six residential lots, primarily in the northern and central portions of the plat.  Each lot is provided a lot number and grouped into one of four blocks.  In the southern portion of the plat are two adjacent triangular parcels labeled "Lincoln Park" and "Jackson Park."  These parcels do not contain lot numbers and are not grouped into blocks.  Lincoln Park is located at the southwestern corner of the plat, and Jackson Park is located at the southeastern corner of the plat, such that the southeastern corner of Lincoln Park adjoins the southwestern corner of Jackson Park, allowing park users to pass between the two parcels without hindrance.  Two public roads lead to the parks: Hamden Court traveling north to south and terminating in the south at Lincoln Park; and Lake Shore Drive, traveling west to east and terminating in the east at the adjoining corners of the parks.  Lake Shore Drive runs parallel to the northern boundary of Lincoln Park and separates the park from the residential lots.  The southwest border of Lincoln Park abuts Lake Mason, and the park provides access to the lake.  The north and west borders of Jackson Park abut some of the numbered residential lots, and Jackson Park does not provide lake access.  None of the residential lots abut Lake Mason.

¶7      As we noted in *Weber I*, although the plat includes explicit language dedicating the streets created by the plat for public use, the plat contains no similar language dedicating the parks for public use, nor does the plat designate the parks as private.  *Weber I*, 2022AP1888, ¶9.

¶8      On June 29, 1926, the Town board approved the plat by resolution, determining that it "appears in all respects to conform to the statutes in such case

4

made and provided." The plat was recorded with Marquette County on July 1, 1926.

¶9     Over the following decades, some of the lot owners in the subdivision erected piers and boat lifts on Lake Mason, and stored those items and other items of personal property in the parks during the winter. Some lot owners treated the parks as if they were their own private property, while others who lived outside of the subdivision used the parks and accessed the lake through Lincoln Park. But it is not disputed that the Town did not maintain or improve the parks, or any other of the half dozen parcels the Town owned around Lake Mason. Before 2020, none of these parcels the Town owned appurtenant to the lake were marked as public property.

¶10     In 2020, a fatality occurred in Lake Mason. This occurrence caused the Town board to review the parcels it owned, and the board became aware that private lot owners in the subdivision were maintaining piers on Lake Mason. In October 2020, the Town passed an ordinance that required an annual pier permit, a fee, and proof of liability insurance in order to maintain a pier on Lake Mason. The appellants contested the Town's authority to require lot owners in the subdivision to take such measures, alleged that the lot owners in the subdivision were the owners of the parks, and brought the underlying action at issue here.

¶11     As noted, we last remanded the case to the circuit court for additional factfinding concerning the Town's counterclaim of ownership of the parks and declaratory judgment request, which was the only issue that remained in the case. A bench trial ensued, during which the Town introduced the following evidence.

¶12     Kathleen Quade, an expert in title searching as stipulated to by the parties, testified as follows. According to the plat, there were several public roads in the subdivision that serviced the parks, in addition to several public roads in a neighboring subdivision that terminated at the parks.

¶13     Quade was asked by the Town to search title records at the Marquette County Register of Deeds concerning the parks from the date the plat was recorded in 1926 to the present, which was then April 2022. Marquette County maintained a tract index, which covers each of the parcels located in the subdivision. There was no indication in the index that any transactions concerning the parcels affected the parks.

¶14     Quade also reviewed all conveyances of any parcel in the subdivision. She discovered that the three original platters conveyed one-third of the total residential lots in the plat to each platter, with the deeds noting the parcel and block numbers for each lot being conveyed. Over time, the platters deeded various lots in the subdivision to family members or sold them to other buyers. The platters did not reserve or designate any private rights in the parks in the deeds; no covenants or restrictions were referenced that provided the lot owners in the subdivision with any special rights or interests in the parks; and there were no restrictions on public access or use of the parks. In sum, there was no document that purported to convey, assert, or include a private ownership interest in the parks, including any estate proceedings in Marquette County, prior to the present action.[3] Outside of the possibility that the platters intended to donate the parks to

---

[3] Quade did find an addendum to a land contract that noted, "vendor to share existing pier and beach," with a partial date stamp indicating that it had been filed on "March 11, 198" with the last number of the year not visible. Quade opined that this addendum did not show a
(continued)

the public through statutory dedication, Quade testified that after the plat was recorded, there is no other chain of title developed transferring ownership of the parks.

¶15     Karen Wampler, the Chairperson for the Town board and board member for twenty-five years, testified as follows. Wampler reviewed the Town's tax records for the subdivision from 1926 through 1940, which was admitted into evidence, and there is no mention of the parks or any indication that the parks had been treated by the Town as private or taxable property under the original platters' names. Wampler did not review tax records from after the year 1940 because she believed the tax rolls indicated that the Town had ownership of the parks "from … day 1." In addition to locating Town Board meeting minutes from 1926 that referenced the approval of the plat, Wampler found meeting minutes from 1932 that indicated the Town board had visited the lakeshore in Lincoln Park to take measurements of the shoreline. The minutes specifically state that "[t]he Town Board met at the Lake View Subdivision on Lake Mason for the purpose of establishing a shore line along lake shore drive and Lincoln Park[.]" (Emphasis omitted.)

¶16     Jim Brancel, the Town treasurer since 1984, testified as follows. It was common practice for platters proposing a subdivision abutting Lake Mason to donate land to the Town, such as roads or strips of land, in order to provide public

transfer of any park land and appeared to permit continued access to the beach and private pier to only the seller.

After the May 2021 commencement of the underlying action, three deeds were filed in September 2021 with the Marquette County Register of Deeds that asserted an interest in the parks, drafted by counsel for the appellants.

7

access to the lake. It was common knowledge that the parks were Town properties. During his tenure as Town treasurer, the Town never assessed taxes on the parks or collected taxes from any individual concerning the parks. Brancel also serves on the Lake District Board for Lake Mason, which is charged with assessing taxes on all lakefront property. The Lake District Board has never assessed taxes on Lincoln Park because it understood it to be public property owned by the Town.

¶17 John Paul Blader, Sr., a licensed assessor for forty-eight years, testified as follows. Blader began working as the Town's assessor in 2008. At that time and until 2020, the Town records for assessment purposes were kept on property record cards maintained in binders. Each card identified a property which was assigned a property classification, such as residential, commercial, agriculture or exempt, which included property owned by the Town. Since well before 2008, the parks had been treated as exempt for tax and assessment purposes. In 2020, Blader began using a digital mapping system that enabled him to identify each lot located in the Town and the owner, and to assign tax parcel numbers for all lots, including for the parks. The parcel numbers assigned to the parks indicate that they are exempt from assessment and taxation.

¶18 Megan Stalker, the Land Information Department Director for Marquette County, testified as follows. Stalker had worked for the County for twenty years and had reviewed county records concerning the parks. The parks had not been listed on the county tax rolls prior to the existence of digital mapping, and the 2020 assignment of parcel numbers was "000" because "they were zero value" since they were owned by the Town. Consequently, the parks were also not taxed at the county level as privately owned.

¶19    The Town called additional witnesses who generally testified that the parks were not lined with fences and the public was not prevented from crossing the parks to access the lake for recreational activities, including ice fishing in the winter.  Witnesses noted that a "private property" sign had been placed at one end of one of the parks, but that no other signs had been posted until the Town posted signs in 2020 that the parks were public.

¶20    The appellants presented several witnesses who generally testified that they, their families, and their friends had always considered the parks to be owned by the residents of the subdivision.  The witnesses described maintaining the parks, storing their personal property in the parks, and a handful of instances when non-residents of the subdivision were asked by residents of the subdivision to leave the parks.  They also acknowledged that Lincoln Park was not fenced in and nothing prevented the public from crossing it to access Lake Mason.

¶21    The circuit court made factual findings that the Town "established by clear, satisfactory, and convincing evidence" that the platters intended to dedicate the parks to the public and that the Town accepted the dedication.  The court concluded that the Town had "sufficiently established" that it owned the parks through both statutory dedication pursuant to WIS. STAT. § 236.11 and common law dedication, and entered a declaratory judgment for the Town.[4]  The appellants appeal.

---

[4] All references to the Wisconsin Statutes are to the 1925 version unless otherwise noted.

**STANDARD OF REVIEW AND
APPLICABLE LEGAL PRINCIPLES**

¶22    The central issue on appeal is whether the Town owns the parks pursuant to statutory dedication.  This determination focuses on whether the platters intended to dedicate the parks to the public, and whether the Town accepted the dedication.  Dedication is defined "to be the act of giving or devoting property to some proper object, in such a way as to conclude the owner." *Kennedy v. Barnish*, 244 Wis. 137, 141, 11 N.W.2d 682 (1943) (quoted source omitted).  "When land is subdivided, roads, streets, and other public spaces are created by means of dedication to the public."  *Vande Zande v. Town of Marquette*, 2008 WI App 144, ¶8, 314 Wis. 2d 143, 758 N.W.2d 187.  In Wisconsin, real property can be dedicated to the public, or to individuals or other entities, by statutory or common law dedication.  *See Cohn v. Town of Randall*, 2001 WI App 176, ¶6, 247 Wis. 2d 118, 633 N.W.2d 674; *see also Vande Zande*, 314 Wis. 2d 143, ¶8.  Statutory dedication is accomplished by complying with statutory requirements, "which usually requires the execution and filing of a plat in accordance with local law."  *Cohn*, 314 Wis. 2d 143, ¶6.  Intent to dedicate property for public use is also an essential component of statutory dedication, because "the municipality cannot accept that which is not offered in the first instance." *Id.*

¶23    Here, the appellants challenge the circuit court's factual findings that the platters intended to dedicate the parks to the public, and that the Town accepted the dedication.  We will not set aside the court's findings of fact unless they are clearly erroneous.  *Racine County v. R.P.L.*, 2026 WI 26, ¶15, 421 Wis. 2d 224, __ N.W.3d. __.  A circuit court's finding of fact is not clearly erroneous unless "the finding is against the great weight and clear preponderance

of the evidence."[5] ***Royster-Clark, Inc. v. Olsen's Mill, Inc.***, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530. It is the exclusive role of the factfinder—here, the circuit court—to assess the credibility of witnesses and to weigh evidence. *See* ***State v. Peppertree Resort Villas, Inc.***, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 ("When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony."); *see also* WIS. STAT. § 805.17(2) (2023-24) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Whether the court applied the correct legal standard to the facts it found is a question of law that we review independently. ***McLellan v. Charly***, 2008 WI App 126, ¶28, 313 Wis. 2d 623, 758 N.W.2d 94.

¶24 In determining whether the platters intended to dedicate the parks to the public under statutory dedication, and whether the Town intended to accept

---

[5] The appellants argue that determining "intent" in this context is a legal question that we review independently. They cite ***Cohn v. Town of Randall***, 2001 WI App 176, ¶7, 247 Wis. 2d 118, 633 N.W.2d 674, for the proposition that when platters have passed away and the only evidence available to glean intent is from documentary evidence in the form of recorded plats and deeds, this court is in "just as good a position as the trial court to make factual inferences based on documentary evidence and we need not defer to the trial court's findings." However, this proposition is inapplicable here. First, as noted, we previously remanded this case to the circuit court for additional factfinding on the issue of the Town's alleged ownership of the parks. Second, the court subsequently conducted a day-long bench trial where it received not only documentary evidence in the form of deeds and plats, but also tax records, property assessment documents and Town Board minutes, and it heard testimony from almost a dozen witnesses. Third, as noted in the text, it is the exclusive role of the factfinder—here, the circuit court—to assess the credibility of witnesses and to weigh evidence. *See* ***State v. Peppertree Resort Villas, Inc.***, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 ("When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony."). Fourth, in their appellate briefing, the appellants apply the clearly erroneous standard of review when discussing the court's factual findings. Therefore, we reject the appellants' argument that the court's factual findings relating to the intent of the platters and the Town should be reviewed de novo instead of for an erroneous exercise of discretion.

11

such dedication, we also review the language in the pertinent statute that was in effect at the time the plat was approved and recorded. *See* WIS. STAT. § 236.11. Statutory interpretation presents issues of law that we review independently. *Heritage Farms, Inc. v. Markel Ins. Co.*, 2009 WI 27, ¶5, 316 Wis. 2d 47, 762 N.W.2d 652.

¶25    The interpretation of a written instrument, including a plat, is also a question of law that we review independently. *Cohn*, 247 Wis. 2d 118, ¶5; *see also Solowicz v. Forward Geneva Nat'l., LLC*, 2010 WI 20, ¶13, 323 Wis. 2d 556, 780 N.W.2d 111 (the interpretation of "a written document affecting land … is a question of law that we review independently").

## DISCUSSION

¶26    For the reasons that follow, we affirm the circuit court's factual findings and legal conclusion that the parks are owned by the Town pursuant to statutory dedication, which, to repeat, is dispositive of all issues raised on appeal.

## I. Factual Findings.

¶27    Based on the evidence admitted at trial, the circuit court found that the platters intended to dedicate the parks to the public and that the Town intended to accept the dedication. The appellants argue that the court's findings in these respects are clearly erroneous on numerous grounds. We are not persuaded.

### A. The Intent to Dedicate

¶28    The circuit court's factual finding that the platters intended to dedicate the parks to the public is supported by the following undisputed trial evidence. Following the approval and the recording of the plat in 1926, there is no

developed chain of title for the parks. Just days after the plat was approved and recorded, the platters divided up the residential lots in the subdivision among themselves through the execution of various deeds, none of which reserved or designated any private ownership interest in the parks to attach to the lots. In referencing these facts, the circuit court reasonably inferred that "[i]f indeed the intent of the platters … was to retain any type of interest, they would have so designated it." Similarly, no private ownership interest in the parks is reserved or designated in any deed executed between any of the platters and any third party, nor in any subsequent deed filed prior to this action.

¶29    The circuit court's factual finding that the platters intended to dedicate the parks to the public is also supported by the trial evidence that strongly suggested that neither the original platters, nor any other individual who held title to any of the lots in the subdivision, had ever paid property taxes on the parks after 1926. A review of the Town's tax rolls from 1926 until 1940 by Wampler, the Town chairperson, revealed that no property taxes had been paid on the parks during this time period. Brancel, the Town treasurer for the past forty years, testified that during his tenure, the Town never assessed taxes on the parks or collected taxes from any individual concerning the parks. The lack of payment of property taxes from any individual, including the platters, supports the inference that, in combination with other factors, the platters intended to dedicate the parks to the public.

¶30    The circuit court's finding of an intent to dedicate is also supported by the existence of public roads in the plat, which the court reasonably interpreted as supporting public access to the parks. Multiple public roads in the subdivision, which had been explicitly dedicated by the platters to the Town, served and concluded at the parks. The court found that the layout of the public streets

supports an inference that the platters intended to facilitate public access to the parks, which is a reasonable inference in support of the court's finding.

¶31 As stated, the appellants argue that the circuit court committed clear error in its factual finding that the platters intended to dedicate the parks to the public. However, none of their arguments alone or cumulatively demonstrate that the court's finding is "against the great weight and clear preponderance of the evidence." *See Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶12.

¶32 The appellants argue that reversal is required because the circuit court violated the "parol" evidence rule by considering extrinsic evidence of the platters' intent. We reject this argument on several grounds. First, the appellants fail to explain the applicability of the parol evidence rule or develop an argument supporting its application here. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (this court need not consider arguments that are unsupported by legal citations or are otherwise undeveloped). Generally, the parol evidence rule is a rule of contract law. *Town Bank v. City Real Estate Development, LLC*, 2010 WI 134, ¶36, 330 Wis. 2d 340, 793 N.W.2d 476. Under this rule, if the parties intend for the contract to be "the final and complete expression of the parties' agreement," the court construing the contract cannot generally consider evidence of any prior or contemporaneous oral or written agreement between the parties. *Id.*, ¶37. Here, there was no evidence introduced at trial of any other oral or written agreement that predates or is contemporaneous with the acceptance and recording of the plat. Second, as best we understand, the appellants appear to conflate the parol evidence rule with the consideration of extrinsic evidence to resolve an ambiguity in a contract or in a legal document. *Id.*, ¶¶ 38-39. When the language of a written instrument is ambiguous, courts may rely on extrinsic evidence to interpret the intention of the parties. *Cohn*, 247

Wis. 2d 118, ¶5.  Third, the appellants failed to raise an objection at trial to the admission of any document into evidence, including: copies of the deeds from the conveyances of the residential lots in the subdivision; copies of the Town's tax rolls for the subdivision from 1926 through 1940; and minutes from the 1932 Town board meeting.  As a general rule, issues not raised in the circuit court will not be considered for the first time on appeal.  *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court.  Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal.").  Based on the appellate briefing, we discern no compelling reason to not apply the forfeiture rule here.

¶33     The appellants next argue that the circuit court "erred when finding that deeds which do not expressly reference Lincoln Park and Jackson Park make[] unequivocally clear that the platters intended to grant or dedicate the parks" to the public.  As best we understand, the appellants may mean to argue that any reference, or lack of reference, to the parks in the subdivision lot deeds is irrelevant and could either support a conclusion that the platters intended to dedicate the parks to the public or that they be private.  *See Schimmels v. Noordover*, 2006 WI App 7, ¶11, 288 Wis. 2d 790, 709 N.W.2d 466.[6]

¶34     The appellants' arguments on this point miss the mark.  They appear to equate the ability of the lot residents to *use* the parks, whether the parks were

---

[6] We note that some of the appellants' legal citations fail to include appropriate pinpoint citations and some of the Town's factual assertions are not supported by cites to the appellate record.  *See* WIS. STAT. RULE 809.19(1)(e) (2023-24); SCR 80.02(3)(a)-(c).  We admonish the parties' respective counsel that future violations of the Rules of Appellate Procedure may result in sanctions.  *See* WIS. STAT. RULE 809.83(2) (2023-24).

intended by the platters as being public or private, which is not contested, with the issue addressed by the circuit court—whether the platters conveyed a private ownership interest in the parks to the lot owners through their deeds. None of the lot owners had a private ownership interest in the parks conveyed with their deeds. The court in part based its finding that the platters intended to dedicate the parks to the public on the absence of any chain of title conveying the parks to another entity or individual and the lack of any reservation or dedication in the deeds of private interests in the parks attaching to the residential lots. As Quade, the title expert, testified at trial, the chain of title for the parks stopped in 1926 after the recording of the plat. That leaves ownership of the parks with the heirs of the original platters—some of whom are among the appellants—if there was no dedication, or with the Town if there was a dedication. At trial, the appellants presented no evidence in support of the former possibility or to refute the substantial evidence the Town presented in support of the latter possibility. The court inferred that if the platters had intended to preserve private ownership interests in the parks following the recording of the plat, they would have conveyed such an interest in the deeds they each personally acquired and later transferred to third parties. This is a reasonable inference and is supported by the trial evidence. A finding of fact is not clearly erroneous merely because a different factfinder could have drawn different inferences from the record. *State v. Wenk*, 2001 WI App 268, ¶8, 248 Wis. 2d 714, 637 N.W.2d 417.

¶35 The appellants also argue that the circuit court clearly erred in finding an intent to donate on the part of the platters because the court engaged in speculation in the following respects. First, the court inferred that the public streets in the plat serviced the parks, as did public streets in a neighboring subdivision. Second, the court inferred that the public nature of the parks was

possibly reflected in the parks being named after national public figures, instead of after individuals locally situated or connected to the subdivision.

¶36 We reject the appellants' assertions that these observations demonstrate that the circuit court's finding of intent is clearly erroneous. In relation to the destination of public roads within the subdivision, the plat shows that Lake Shore Drive, which is parallel to Lincoln Park and runs east to west, terminates on the east end where the corners of the parks met. Hamden Court, running north to south, terminates on the south end at Lincoln Park. On this issue, the court raised a rhetorical question that the appellants do not answer: "Why in the world create public roads through an area that is intended to remain private?" With respect to the other asserted "speculations," even if the orientation of the public roads in a neighboring subdivision and the park names support, at best, weak inferences about the platters' intent, these topics do not sufficiently undermine the other collective evidence that supports the court's finding that the platters intended to dedicate the parks to the public.

¶37 Finally, the appellants argue that the circuit court's finding of intent is clearly erroneous because in her testimony, Wampler, the Town Board chair, admitted that "[w]e don't know for sure" what the platters intended. However, the appellants take this testimony out of context. The entire trial exchange on this issue is as follows:

> [Appellants' Attorney]: "[I]t's very difficult to -- I don't know and you don't know what the intent of the original platters were as to those parks, if they were intended to dedicate them or not?
>
> [Wampler]: We don't know for sure, but the tax rolls stating -- or not showing those two parcels as taxable property under the owners' names.

17

In context, this testimony supports the findings and inferences made by the circuit court as to the platters' intent to dedicate, and we reject the appellants' argument to the contrary.

¶38    To the extent that the appellants make other arguments in an attempt to demonstrate that the circuit court erred in its factual finding of the platters' intent, we reject them as being conclusory, undeveloped, or lacking in citation to supportive legal authority.  *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (the court may decline to consider conclusory and undeveloped arguments that are not adequately briefed); *see also Pettit*, 171 Wis. 2d at 647 (the court may decline to address undeveloped arguments or arguments unsupported by legal authority.).

¶39    In sum on this issue, we conclude that the circuit court did not clearly err in its factual finding that the platters intended to dedicate the parks to the public.

### B.  The Intent to Accept

¶40    The appellants argue that the circuit court's factual finding of the Town's intent to accept the dedication of the parks is "clearly erroneous and speculative" and constitutes a "manifest error" and an "abuse of discretion."  We reject these arguments, concluding that the appellants have not demonstrated that the court clearly erred in making this finding.

¶41    The circuit court's finding that the Town intended to accept the dedication of the parks is sufficiently supported by the trial evidence.  The court considered that following the recording of the plat in 1926: the Town maintained similar parcels around Lake Mason that it did not maintain, to ensure public access

18

to the lake; the parks were treated as if they were owned by the Town in that they were classified as public property and exempt from taxation for sufficient periods of time; the minutes from a Town Board meeting in 1932 demonstrate that the board visited Lincoln Park "for the purposes of establishing a shoreline along lake shore drive and Lincoln Park" and that the Board examined the boundaries of the shoreline; and the testimony of several witnesses who had lived outside of the subdivision in decades past that they had used the parks to recreate and had witnessed other members of the public using the parks to recreate. The court found that the testimony of these witnesses was more credible than the testimony of some of the appellants that the public did not use the parks.

¶42 The appellants argue that this finding is clearly erroneous because such acceptance is not specifically indicated in any formal document in evidence. We reject this argument because the appellants provide no authority for the proposition that acceptance of a dedication must be indicated in a formal document. *See* **Pettit**, 171 Wis. 2d at 647 (we may decline to address undeveloped arguments or arguments unsupported by legal authority).

¶43 The appellants further argue that the 1932 Town Board meeting minutes do not support the circuit court's finding that the Town accepted the dedication because the minutes do not include proper measurements of the Lake Mason shoreline in Lincoln Park and reference only two landmarks on the shoreline, and because the court speculated when it questioned the motive for the Town board to visit the shoreline of Lake Mason abutting Lincoln Park if the board had no ownership interest in the park. At bottom, the appellants dispute the inferences the court made regarding the board minutes and the board's visit to the shoreline abutting Lincoln Park. As stated, a finding of fact is not clearly

erroneous merely because a different fact finder could have drawn different inferences from the record. *State v. Wenk*, 248 Wis. 2d 714, ¶8.

¶44 The appellants also assert that the Town can only accept an offer to dedicate within the lifetime of the platter, and they imply that the Town failed to timely accept the dedication of the parks. We reject this assertion as a matter of law because the appellants fail to acknowledge WIS. STAT. §236.50(2) (2023-24), a curative statute that retroactively applies to older plats that may not be compliant with statutory requirements. This statute explicitly contemplates the effect of a lack of acceptance of a public dedication and states that:

> No plat which was recorded in the office of any register of deeds prior to July 1, 1956, shall be held invalid by reason of noncompliance with any statute regulating the platting of lands, in force at the time of such recording. Any unaccepted offer of donation or dedication of land attempted to be made in any such plat shall be as effectual as though all statutory requirements had been complied with unless an action to set aside such offer of donation or dedication is commenced prior to July 1, 1958.

*See* § 236.50(2) (2023-24). In other words, no plat that was properly recorded prior to July 1956 and that included a land dedication can be invalidated because of the nonacceptance of the recipient unless a legal action commenced prior to July 1958. It is undisputed that the plat here was properly recorded. Hence, to the extent the appellants mean to argue that the Town did not timely accept the parks, they cannot rely on that argument one century later to invalidate the plat.

¶45 In sum on the issue of the Town's intent to accept the dedication of the parks, we conclude that the appellants have failed to demonstrate that the circuit court's factual finding is clearly erroneous.

## II. Legal Conclusions.

¶46 The appellants appear to make a third category of arguments which, as best we understand, imply that the circuit court erred as a matter of law in its legal conclusion that the Town owns the parks pursuant to statutory dedication. The appellants' assertions on this point are hard to follow and are not well developed. Nonetheless, to the best that we can discern these arguments, we reject them and affirm the circuit court's conclusion that the Town owns the parks pursuant to statutory dedication as set forth in WIS. STAT. § 236.11.

¶47 At the beginning of this discussion, we acknowledged that throughout their appellate briefing, the appellants erroneously assert that in *Weber I*, this court "previously found … that the Plat did not grant the parks to the Town." In fact, we stated that "[h]aving reviewed the documentary evidence submitted in support of summary judgment on the Town's counterclaim, we cannot conclude that no genuine issue of material fact exists with respect to the Town's claim of ownership of the two parks." *Weber I*, 2022AP1888, ¶13. We remanded the issue of the Town's counterclaim of ownership of the parks to the circuit court for further factfinding. A bench trial followed, and the court made its findings of fact and legal conclusions. A circuit court's factfinding and decision at the conclusion of a bench trial is wholly distinct from an appellate court's review of a summary judgment motion. Our conclusion that the materials presented on summary judgment did not establish that there were no genuine issues of material fact is not dispositive of the circuit court's consideration of the same or similar materials at trial. To emphasize this point further, the circuit court has now had the ability to consider not just the documentary evidence submitted at trial, but also witness testimony, which the court as factfinder is distinctly suited to weigh. We therefore reject the appellants' characterization of our decision in *Weber I*.

21

¶48   Next, the appellants argue that because the plat did not include an explicit "mark[] or note[]" that the parks were dedicated for the public, pursuant WIS. STAT. § 236.11, no statutory dedication occurred and the plat could not convey ownership of the parks from the platters to the Town.  On this point, the appellants also assert that "parol evidence" cannot be used to "suppl[y] fatal omissions" on the face of the plat.  We have already rejected this latter point on forfeiture grounds, and we reject the former argument on multiple other grounds.

¶49   As noted by the circuit court, the appellants appear to apply a more exacting standard than that which is reflected in WIS. STAT. § 236.11.  The statute states, in pertinent part:

> When any [plat] shall have been made, certified, signed, acknowledged and recorded as above in this chapter prescribed every donation or grant to the public … marked or noted as such on said plat [] shall be deemed in law and in equity a sufficient conveyance to vest the fee simple of all such [] parcels of land as are therein expressed, and shall be considered to all intents and purposes a general warranty against such [] donors, their heirs and representatives to the said [] donees, [] grantees for [] their use for the uses and purposes therein expressed and intended and no other use or purpose whatever; and the land intended to be for the streets, alleys, ways, commons or other public uses as designated on said plat shall be held in the corporate name of the town.

*See* WIS. STAT. § 236.11.[7]   Unlike current plat statutory requirements, which require specific language to indicate an intent to dedicate,[8] § 236.11 required no such precise language.

---

[7]   WISCONSIN STAT. § 236.11 (1925), in its entirety, states:

> **Title to land marked as donated.** When any map shall have been made, certified, signed, acknowledged and recorded as above in this chapter prescribed every donation or grant to the

(continued)

¶50 It is undisputed that the only references to the parks in the plat are the designation of "Lincoln Park" and "Jackson Park." The appellants argue that the circuit court erred in concluding that the Town owns the parks pursuant to statutory dedication because these terms do not constitute a "mark" or a "designation" that the platters intended to dedicate the parks to the public. We disagree.

¶51 The term "park" is not defined in the plat. Our goal in interpreting the language of a legal instrument, including a plat, is to construe the relative rights of the platters and the recipients to carry out their intentions. *See* ***Konneker v. Romano***, 2010 WI 65, ¶26, 326 Wis. 2d 268, 785 N.W.2d 432. When a legal document lacks a specific definition, we may attempt to discern its common or

public or any individual or individuals, religious society or societies or to any corporation marked or noted as such on said plat or map shall be deemed in law and in equity a sufficient conveyance to vest the fee simple of all such parcel or parcels of land as are therein expressed, and shall be considered to all intents and purposes a general warranty against such donor or donors, their heirs and representatives to the said donee or donees, grantee or grantees for his, her or their use for the uses and purposes therein expressed and intended and no other use or purpose whatever; and the land intended to be for the streets, alleys, ways, commons or other public uses as designated on said plat shall be held in the corporate name of the town, city or village in which such plat is situated in trust to and for the uses and purposes set forth, expressed and intended. Such map or the record thereof or a certified copy of such record shall be presumptive evidence of the truth of the facts therein stated in accordance with the provisions of this chapter.

We note that this statutory language is substantially similar to the statutory language currently set forth in WIS. STAT. § 236.29(1) (2023-24).

[8] *See* WIS. STAT. § 236.20(4)(b) (2023-24), which states: "All lands dedicated to public use shall be clearly marked 'Dedicated to the Public.'"

ordinary meaning by consulting a dictionary definition. *See **Ennis v. Western Nat'l Mut. Ins. Co.***, 225 Wis. 2d 824, 831-32, 593 N.W.2d 890 (Ct. App. 1999).

¶52 One apt and applicable definition of the word "park" in 1926 was "[a]n enclosed pleasure-ground in or near a city, set apart for the recreation of the public." *Park*, BLACK'S LAW DICTIONARY (2nd ed. 1910). This definition, in the context of our inquiry here, helps provide some limited understanding about why there may be no specific reference in the plat to the parks being dedicated for the public. In other words, if one component of the definition of "park" is a space accessible to the public, it is reasonable to interpret the terms "Lincoln Park" and "Jackson Park" as incorporating a public access component. This definition is apt in the context of the plat and the factual situation here. Therefore, we are satisfied that one appropriate and applicable definition of "park" at the time the plat was approved and recorded included a public access component, which supports an inference that the platters intended to dedicate the parks to the public.

¶53 The appellants also argue that because there is no evidence that the platters transferred or conveyed any ownership interests in the parks to another owner or entity, the court erred as a matter of law in finding that the platters intended to dedicate the parks to the Town. To the extent that this is a repackaging of the appellants' arguments that the court's findings of intent to dedicate and intent to accept are clearly erroneous, we have rejected this argument above. To the extent that the appellants mean to argue that the court's findings as applied to the applicable law result in legal error, we reject this argument based on the plain language in WIS. STAT. § 235.11 that dedicated parcels, like the parks, "on said plat … shall be deemed … a sufficient conveyance to vest the fee simple[.]" Thus, in conjunction with the factual findings that the platters intended to dedicate the parks to the public in compliance with § 236.11, and that the Town

accepted this dedication, no further documentation of a conveyance or transfer was necessary to establish the Town's acceptance of the dedication and its ownership of the parks.

¶54     Finally, as already discussed, the curative language set forth in WIS. STAT. § 236.50(2) (2023-24) provides that even if the Town did not explicitly accept the dedication of the parks from the platters, "any such plat shall be as effectual as though all statutory requirements had been complied with unless an action to set aside such offer of donation or dedication is commenced prior to July 1, 1958."

¶55     In sum on this issue, we reject the appellants' argument that the court erred as a matter of law in concluding that the Town owns the parks under statutory dedication.  Because our conclusion that the Town owns the parks through statutory dedication is dispositive, we need not address the other issues raised by the appellants on appeal.  *See **Barrows v. American Family Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶56     To the extent that the appellants raise other arguments on appeal, they are undeveloped and we decline to address them further.  *See **Pettit***, 171 Wis. 2d at 647.

### III.  Motion for Sanctions.

¶57     The appellants move for an order for sanctions against the Town and for the imposition of various penalties pursuant to WIS. STAT. RULES 809.19 and 809.83(2), which the appellants claim are warranted against the Town for committing various violations of the appellate rules of procedure and of Supreme

Court ethical rules in its appellate briefing. Although we agree that both the Town and the appellants periodically fail to cite to record evidence, fail to support legal arguments with appropriate legal authority, and even, in the case of the appellants, fail to include current and proper case cites as required by RULE 809.19(1)(e), we do not conclude that the omissions identified by the appellants require sanctions to be imposed against the Town at this juncture. Further, we do not conclude that the Town made material misrepresentations that would rise to the level of ethical violations so as to warrant the imposition of sanctions. Therefore, we deny the appellants' motion.

## CONCLUSION

¶58 For the reasons stated, we affirm the circuit court's judgment declaring that the Town is the owner of the parks pursuant to statutory dedication.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2023-24).